UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 07-01855-TLM |
| WHITNEY LAURSEN, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| JEREMY J. GUGINO, Chapter 7 ) | |
| Trustee, ) | |
| ) | Adversary No. 08-6011-TLM |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| GENERAL MOTORS ) | |
| ACCEPTANCE CORPORATION ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION**
_____

**INTRODUCTION**

In this adversary proceeding, plaintiff Jeremy J. Gugino, the chapter 7 Trustee, seeks to avoid a security interest asserted by defendant General Motors Acceptance Corporation (GMAC). The Trustee contends GMAC's security interest is avoidable because it was unperfected when the debtor, Whitney

MEMORANDUM OF DECISION - 1

Laursen, filed her chapter 7 bankruptcy petition. *See* 11 U.S.C. § 544(a)(1).[1]

The Court scheduled a trial of this action for June 23, 2008. Prior to trial, however, the parties stipulated to all the relevant facts. *See* Doc. No. 8. Then, at the time set for trial, the parties waived oral argument regarding the legal issues and submitted the matter on the record and their written briefs. This Decision constitutes the Court's findings of fact and conclusions of law. *See* Fed. R. Bankr. P. 7052.

**FACTS**

In July 2003, Laursen purchased a new Chevrolet Trail Blazer from a licensed General Motors dealer. Laursen financed the purchase by executing a retail installment contract with the dealer, which called for monthly payments over a six-year period. Under the contract, Laursen agreed to grant the dealer a security interest in the Blazer. The dealer later assigned its interest in the contract to GMAC.

Shortly thereafter, the dealer applied for a certificate of title from Idaho's

---

[1] Section 544(a)(1) states:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--

   (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists[.]

MEMORANDUM OF DECISION - 2

Department of Transportation (IDOT). In the application, the dealer made a one-character typographical error in Laursen's first name: Laursen's first name is Whitney, but it is listed as "Whitnet" on the application.[2] When IDOT issued the certificate of title, it used the name as shown on the application, thus perpetuating the error. Consequently, when Laursen filed her chapter 7 bankruptcy petition in November 2007, the Blazer was titled in the name of Whitnet Laursen.

The Trustee contends that, due to this misspelling, GMAC's security interest in the Blazer is unperfected and thus avoidable under § 544(a)(1). GMAC concedes the certificate of title contains a typographical error, but contends the certificate of title was nonetheless effective to perfect its security interest.

**DISCUSSION AND DISPOSITION**

Section 544(a) grants the Trustee the powers of a hypothetical lien creditor as of the date Laursen filed her bankruptcy petition. As a result, if Debtor owns the Blazer and if GMAC's security interest is not adequately perfected, the Trustee may avoid that security interest and retain it for the benefit of the estate. *See* §§ 544(a), 551.

State law governs the Trustee's rights as a hypothetical lien creditor. *See, e.g., Hopkins v. Gutknecht (In re Lewis),* 04.3 I.B.C.R. 133, 135 (Bankr. D. Idaho

---

[2] Laursen's name is spelled correctly on her Retail Installment Sales Contract with the dealer and also on the attachments to the IDOT application. The error is limited to the face of the application.

MEMORANDUM OF DECISION - 3

2004). Under Idaho law, security interests in vehicles may be perfected only by complying with the state's certificate of title laws. *See* Idaho Code §§ 28-9-311(a)(2); 49-510; 49-512. As stated in Idaho Code § 49-510(1):

> No lien or encumbrance on any vehicle registered under the laws of this state . . . shall be perfected as against creditors or subsequent purchasers or encumbrancers without notice until the holder of the lien or encumbrance . . . has complied with . . . section 49-504 . . . .

Section 49-504 in turn, requires persons applying for a certificate of title to complete the form furnished by IDOT, and to supply "a full description of the vehicle" including the make, identification numbers and odometer reading, as well as "a statement of the applicant's title and of any liens or encumbrances upon the vehicle, and the name and address of the person to whom the certificate of title shall be delivered[.]" Idaho Code § 49-504(1).

Upon receiving a completed application, IDOT's first duty is to check the vehicle's identification number (its "VIN") against the VIN index the department is required to maintain. *Id.* § 49-504(4). Then, if satisfied that the application is in proper form, IDOT must issue a certificate of title "in the *name* of the owner of the vehicle[.]" *Id.* (emphasis added).

The Trustee contends that these statutes – and the use of the word *name* in particular – should be strictly construed. More specifically, the Trustee contends that the one-character typographical error in Laursen's certificate of title means GMAC has not complied with Idaho Code § 49-504, and has therefore failed to

MEMORANDUM OF DECISION - 4

perfect its security interest in the Blazer under Idaho Code § 49-510(1).

There are no Idaho decisions addressing this issue. The Trustee, however, contends that authorities regarding Uniform Commercial Code (UCC) financing statements are applicable by analogy. *See* Doc. No. 11 at 7. The Court will first address that argument.

### A. Authority regarding UCC financing statements

Recently, several courts have held that errors in UCC financing statements – even seemingly minor ones – can be fatal. For example, creditors who listed a debtor's first name as *Roger* instead of *Rodger*[3] (or *Mike* instead of *Michael*[4] or *Terry* instead of *Terrance*[5]) in the financing statement failed to properly perfect their security interests. Recently this Court, in *Hopkins v. NMTC Inc. (In re Fuell)*, No. 07-8046, 2007 WL 4404643, at *3 (Bankr. D. Idaho Dec. 13, 2007), held that a creditor failed to properly perfect its security interest because it used the name Andrew Fuel, rather than the correct name, Andrew Fuell, in a financing statement.

The harsh results in these cases were justified, however, because third parties searching for existing security interests in goods look in the appropriate

---

[3] *Pankratz Implement Co. v. Citizens Nat'l Bank*, 130 P.3d 57, 59, 65 (Kan. 2006).

[4] *Genoa Nat'l Bank v. Southwest Implement, Inc. (In re Borden)*, 353 B.R. 886, 887, 891 (Bankr. D. Neb. 2006) (collecting cases).

[5] *Clark v. Deere & Co. (In re Kinderknecht)*, 308 B.R. 71, 76 (10th Cir. BAP 2004).

MEMORANDUM OF DECISION - 5

secretary of state's database for UCC-1 financing statements. *Fuell*, 2007 WL 4404643, at *4. *See generally* 4 James J. White & Robert S. Summers, *Uniform Commercial Code* § 31-18 (4th ed. 1995 & Supp. 2007). Further, these databases must be indexed by the debtor's name. *See, e.g.,* Idaho Code § 28-9-519(c). *Compare* Idaho Code § 49-504(4) (motor vehicles indexed by number). Thus, in order to accurately and reliably notify third parties of existing security interests in goods, it is crucial the debtor's name is correctly and exactly listed on the financing statement. In fact, the form financing statement supplied in Idaho's UCC instructs the preparer to provide the "DEBTOR'S EXACT FULL LEGAL NAME." Idaho Code § 28-9-521(a). There is no equivalent instruction in IDOT's application for a certificate of title. *See* Doc. 8, Ex. B thereto (IDOT Application for Certificate of Title). Instead, IDOT's system relies primarily on the VIN.

Further, unlike Idaho's certificate of title laws, Idaho's UCC provides detailed statutory guidance regarding the impact of errors in the *name* portion of the financing statement. Initially, Idaho Code § 28-9-506(a) provides that financing statements containing "minor errors" are effective unless those errors are "seriously misleading." Sub-section (c) provides, more specifically, that if a creditor: (1) searches the filing office's records under the debtor's correct name, using the filing office's standard search logic; and (2) that search turns up a financing statement containing errors in the debtor's name, then the errors will not

MEMORANDUM OF DECISION - 6

render the financing statement seriously misleading. *Id.* § 28-9-506(c). And many courts have held the opposite inference is true: if the inquiring creditor enters the debtor's correct name, and the filing office's standard search logic fails to find a financing statement containing the incorrect name, then the financing statement is "seriously misleading." *See*, *e.g., Fuell*, 2007 WL 4404643, at *3; *accord* 4 White & Summers § 31-12 (5th ed. 2002).

Exporting these UCC authorities to the present situation, however, is not as easily done as the Trustee suggests. First, Idaho Code §§ 28-9-311(a) and 49-510 provide that certificate of title laws are the *exclusive* means of perfecting security interests in motor vehicles. *See Lewis*, 04.3 I.B.C.R. at 135. Thus, there is no reason to apply the "minor errors not seriously misleading" provisions of Idaho Code § 28-9-506(a) to security interests in vehicles.

Second, Idaho's certificate of title laws require IDOT to index motor vehicles by VIN – not by name. *See* Idaho Code § 49-504(4). The UCC's filing system is fundamentally different from IDOT's: accuracy of names is paramount in the UCC filing system, while accuracy of numbers (the VIN) is critical in Idaho's motor-vehicle filing system. *See* Barkley Clark & Barbara Clark, *What if the Debtor's Name is Messed up on a Motor Vehicle Certificate of Title?*, A.S. Pratt & Sons: Clark's Secured Transactions Monthly (Jan. 2008) (analyzing *Fuell* and other Idaho cases and concluding that "a one-character error in the debtor's

MEMORANDUM OF DECISION - 7

name on a certificate of title" would not be fatal under Idaho's certificate of title laws even though it might be under the UCC).

Thus, under Idaho's motor vehicle code, third parties who want to buy a car or take a security interest in one will either examine the certificate of title in the owner's possession, and see any existing liens, or search IDOT's records.[6] The fact that IDOT's records *can* be searched by name does not alter the fact that its required indexing protocol is by VIN. *See* Idaho Code § 49-504(4).

For example, assume a creditor wished to obtain a lien in a debtor's vehicle. Performing an IDOT name search (as the Trustee did in this case) and finding *no* vehicles listed under the debtor's name would not allow this third party creditor to believe it could safely obtain a first priority position in the debtor's vehicle, as it would if performing the same search under the UCC. Instead, it would alert the creditor that the debtor may not have an ownership interest in the vehicle. Upon further investigation, searching by the VIN, the creditor could substantiate ownership or lack thereof.[7]

---

[6] Though the Trustee is here a hypothetical judicial lien creditor under § 544(a), rather than a prospective consensual secured creditor, the distinction is immaterial. The laws governing perfection of a consensual security interest in motor vehicles (such as GMAC's) operate the same regardless of whether the issue later arises in the context of a competing consensual secured creditor or a judicial lien creditor levying upon the vehicle.

[7] *See e.g.*, *Hopkins v. Cummins (In re Mason)*, 06.2 I.B.C.R. 17, 19-20 (Bankr. D. Idaho 2006). In *Mason*, this Court established that ownership interests and security interests in vehicles (there a vessel) are governed by the certificate of title issued with the correct VIN. *Id*. at 19 (explaining that the state issues certificates of title for boats in the same manner as vehicles pursuant to Idaho Code §§ 67-7039 - 7041). The Court concluded that the debtors were still the
(continued...)

MEMORANDUM OF DECISION - 8

Here, while a name search under "Whitney Laursen" does not show Debtor as the owner of the Blazer, a VIN search reveals Whitnet Laursen as owner. Doc. No. 8 at ¶¶ 18, 20, and Exs. G, H.[8] More importantly, IDOT's VIN registry shows GMAC as a lien creditor on the Blazer. *Id.* at ¶¶ 19, 20, and Ex. E. If Debtor has an ownership interest in the VIN-identified Blazer regardless of the one character mistake in Debtor's name then GMAC has a properly perfected security interest in the vehicle with that VIN.

In sum, the authorities regarding errors in UCC financing statements are inapplicable here.

### B. Authorities regarding Idaho Code § 49-503

As an alternative to the importation of UCC authorities or analysis, the Trustee contends this Court's cases construing Idaho Code § 49-503 support the notion that GMAC's security interest was not properly perfected. *See* Doc. No. 11 at 5-6 (citing, *e.g.*, *Hopkins v. Shradley (In re Shradley)*, 03.1 I.B.C.R. 7, 9 (Bankr. D. Idaho 2003)).

The Court has just explained why GMAC's perfection meets the Idaho

---

[7] (...continued)
owners of a vessel they had transferred to a third party several years prior to filing bankruptcy because that transfer (and several subsequent transfers) had all occurred using a certificate of title with an incorrect VIN. Debtors remained listed as owners on the only certificate of title with the correct VIN.

[8] A name search under "Laursen, W" (among other iterations) discloses the Blazer. *Id.* at ¶ 23 and Ex. I. The name search instructions on the IDOT website state: "All record searches by name requires the name to match the beginning part of the name on the vehicle record."

MEMORANDUM OF DECISION - 9

motor vehicle code. The cases the Trustee cites do not compel a different conclusion. In fact, they are distinguishable in that they do not address the perfection of a secured claim at all but, rather, issues regarding the proper owner of a vehicle (based on the absence or presence of a name on the certificate of title).

Preliminarily, Idaho Code § 49-503 provides that a person cannot acquire any "right, title, claim or interest in or to [a] vehicle" until IDOT has issued a certificate of title to him or her. The Trustee correctly notes that this Court has strictly construed this statute, but none of the cases cited by the Trustee addressed the impact of a typographical error in the owner's name on a certificate of title. Rather, in those cases, the alleged "true" owner of a vehicle simply did not appear on the title.

In *Shradley*, for example, Casey Shradley bought a Chevy pickup with his own money. 03.1 I.B.C.R. at 7. Later, in order to avoid certain emissions requirements, he transferred the certificate of title to his brother, Shane Shradley. *Id.* When Shane filed bankruptcy, his trustee sought turnover of the vehicle. *Id.* Strictly construing Idaho Code § 49-503, this Court held that the car belonged to Shane because his name appeared on the title. *Id.* at 8-9.

More recently, in *In re Woods*, 386 B.R. 758 (Bankr. D. Idaho 2008), the debtors argued that they did not own a car because they had previously sold it to their daughter and son-in-law. *Id.* at 760. But the debtors had not transferred title

MEMORANDUM OF DECISION - 10

before filing their bankruptcy petition. *Id.* As in *Shradley*, this Court relied on Idaho Code § 49-503 in concluding that the car belonged to the debtors. *Id.* at 762.

Thus, although this Court strictly construes Idaho Code § 49-503, the cases cited by the Trustee do not hold, or suggest, that a typographical error in the owner's name on a certificate of title will deprive an owner of her interest in the vehicle nor a creditor of it's security interest.[9] *Compare Mason*, 06.2 I.B.C.R. at 19-20, discussed above at note 7, where a typographical error in the VIN on a certificate of title was of consequence.

This Court does not construe the Idaho Code in the manner suggested by the Trustee. Debtor, despite the minor typographical error in her name on the certificate of title, is the owner of the Blazer. She granted GMAC a security interest in the Blazer, and GMAC properly perfected that interest on a certificate of title issued and indexed under the correct VIN for that vehicle.[10]

**CONCLUSION**

GMAC's security interest in the Blazer was properly perfected despite the typographical error in Debtor's name on the certificate of title. Therefore, the Court will enter judgment for GMAC. Counsel for GMAC shall submit a

---

[9] The Trustee also has not established that, if Laursen's interest in the Blazer is assailable because her fully accurate, legal name is not on the certificate of title, this provides the Trustee with any right to recovery against the Defendant herein, GMAC, under § 544(a).

[10] The Trustee's remaining arguments have been considered and are found unpersuasive.

MEMORANDUM OF DECISION - 11

proposed judgment consistent with this Decision.

DATED: June 26, 2008



*Terry Myers*

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 12